# IN THE UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

-----------------------------------------------------x

NML CAPITAL, LTD.,

        Plaintiff-Appellee,     :

                       :    No. 14-2702(L), No. 14-2705

         v.           :    No. 14-2691(L), No. 14-2693

                       :    No. 14-2713(L), No. 14-2714

REPUBLIC OF ARGENTINA,    :

        Defendant-Appellant,  :    APPEALS FROM THE

                       :    SOUTHERN DISTRICT

CITIBANK, N.A.,             :    OF NEW YORK

        Movant-Appellant.    :

-----------------------------------------------------x

AURELIUS CAPITAL MASTER, LTD.,  :

and                        :

AURELIUS OPPORTUNITIES FUND II, :    No. 14-2689(L), No. 14-2692

LLC,                     :    No. 14-2732(L), No. 14-2736

        Plaintiffs-Appellees,  :    No. 14-2709(L), No. 14-2711

                       :

         v.           :    APPEALS FROM THE

                       :    SOUTHERN DISTRICT

REPUBLIC OF ARGENTINA,    :    OF NEW YORK

        Defendant-Appellant,  :

                       :    *(captions continue on next page)*

CITIBANK, N.A.,             :

        Movant-Appellant.    :

-----------------------------------------------------x

## OPPOSITION OF PLAINTIFFS-APPELLEES
## TO EMERGENCY MOTIONS OF
## THE REPUBLIC OF ARGENTINA AND OF CITIBANK, N.A.,
## TO EXPEDITE APPEALS

```
-----------------------------------------------x
AURELIUS OPPORTUNITIES FUND II,    :
LLC,                                :
and                                 :    No. 14-2724(L), No. 14-2728
AURELIUS CAPITAL MASTER, LTD.,     :
                Plaintiffs-Appellees, :   APPEAL FROM THE
                                    :    SOUTHERN DISTRICT
            v.                      :    OF NEW YORK
                                    :
REPUBLIC OF ARGENTINA,             :
                Defendant-Appellant, :
                                    :
CITIBANK, N.A.,                     :
                Movant-Appellant.   :
-----------------------------------------------x
AURELIUS CAPITAL MASTER, LTD.,     :
and                                 :
ACP MASTER, LTD.,                   :    No. 14-2715(L), No. 14-2718
                Plaintiffs-Appellees, :   No. 14-2722(L), No. 14-2723
                                    :
            v.                      :    APPEALS FROM THE
                                    :    SOUTHERN DISTRICT
REPUBLIC OF ARGENTINA,             :    OF NEW YORK
                Defendant-Appellant, :
                                    :
CITIBANK, N.A.,                     :
                Movant-Appellant.   :
-----------------------------------------------x
BLUE ANGEL CAPITAL I LLC,          :
                Plaintiff-Appellee,  :
                                    :
                                    :    No. 14-2696(L), No. 14-2698
            v.                      :    No. 14-2699(L), No. 14-2703
                                    :
REPUBLIC OF ARGENTINA,             :    APPEALS FROM THE
                Defendant-Appellant, :    SOUTHERN DISTRICT
                                    :    OF NEW YORK
CITIBANK, N.A.,                     :
                Movant-Appellant.   :    (captions continue on next page)
-----------------------------------------------x
```

```
-----------------------------------------------x
OLIFANT FUND, LTD.,                             :
                    Plaintiff-Appellee,         :   No. 14-2701(L), No. 14-2704
                                                :
            v.                                  :   APPEAL FROM THE
                                                :   SOUTHERN DISTRICT
REPUBLIC OF ARGENTINA,                          :   OF NEW YORK
                    Defendant-Appellant,        :
                                                :
CITIBANK, N.A.,                                 :
                    Movant-Appellant.           :
-----------------------------------------------x
PABLO ALBERTO VARELA, et al.,                   :
                    Plaintiffs-Appellees,       :
                                                :
            v.                                  :   No. 14-2697(L), No. 14-2700
                                                :
REPUBLIC OF ARGENTINA,                          :   APPEAL FROM THE
                    Defendant-Appellant,        :   SOUTHERN DISTRICT
                                                :   OF NEW YORK
CITIBANK, N.A.,                                 :
                    Movant-Appellant.           :
-----------------------------------------------x
```

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1, the undersigned counsel state that:

NML Capital, Ltd. is not publicly traded and has no corporate parent, and no publicly held corporation owns 10% or more of its stock.

Aurelius Capital Master, Ltd. ("ACM") is an exempted company with limited liability incorporated in the Cayman Islands. Aurelius Capital International, Ltd., is the parent of ACM. No publicly held corporation owns 10% or more of the stock of ACM.

ACP Master, Ltd. is an exempted company with limited liability incorporated in the Cayman Islands. Aurelius Capital Partners, LP, is the parent of ACP Master, Ltd. Aurelius Capital GP, LLC is the sole general partner of Aurelius Capital Partners, LP, and is the indirect parent of ACP Master, Ltd. No publicly held corporation owns 10% or more of the stock of ACP Master, Ltd.

Aurelius Opportunities Fund II, LLC ("AOF") is a limited liability company organized and existing under the laws of the State of Delaware. AOF is not a corporation and therefore Rule 26.1 does not require any disclosures with respect to it.

Blue Angel Capital I LLC ("Blue Angel") is a limited liability company organized and existing under the laws of the State of Delaware. Blue Angel is not

a corporation and therefore Rule 26.1 does not require any disclosures with respect to it.

Olifant Fund, Ltd., is not publicly traded; its parent corporation is ABIL, Ltd., and no publicly held corporation owns 10% or more of its stock.

Pablo Alberto Varela, Lila Ines Burgueno, Mirta Susana Dieguez, Maria Evangelina Carballo, Leandro Daniel Pomilio, Susana Aquerreta, Maria Elena Corral, Teresa Munoz de Corral, Norma Elsa Lavorato, Carmen Irma Lavorato, Cesar Ruben Vazquez, Norma Haydee Gines, and Marta Azucena Vazquez are not corporations, and therefore Rule 26.1 does not require any disclosures with respect to them.

# TABLE OF CONTENTS

**Page**

CORPORATE DISCLOSURE STATEMENT ........................................................ i

TABLE OF AUTHORITIES ...................................................................... iv

INTRODUCTION ...................................................................................1

BACKGROUND ...................................................................................4

    A. Past Proceedings ........................................................................4

    B.  Argentina's Post-Denial Violations Of The Injunctions................................6

    C.  Citibank's Motion For "Clarification Or Modification"................................7

    D. The July 28 Order ......................................................................11

ARGUMENT ....................................................................................12

I.     This Court Should Not Grant Discretionary Relief To A Serial Violator Of U.S. Court Orders ...................................................................12

II.    There Is No Need to Expedite This Appeal................................................14

III.   Appellants Will Not Be Prejudiced By The Absence Of Expedition Because Their Appeal Is Without Merit........................................................16

IV.   Expedition Is Not In The Public Interest And Would Severely Prejudice Appellees ...................................................................................19

V.    Appellees Consent To Appellants' Motion To Consolidate Their Appeals .....................................................................................20

CONCLUSION ..................................................................................20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alfred Dunhill of London, Inc. v. Republic of Cuba*,
  425 U.S. 682 (1974) .......................................................................................17

*Allied Bank Int'l v. Banco Credito Agricola de Cartago*,
  757 F.2d 516 (2d Cir. 1985) ...........................................................................17

*Bano v. Union Carbide Corp.*,
  361 F.3d 696 (2d Cir. 2004) ...........................................................................17

*City of N.Y. v. Mickalis Pawn Shop, LLC*,
  645 F.3d 114 (2d Cir. 2011) ...........................................................................17

*Lake Shore Asset Mgmt. Ltd. v. CFTC*,
  511 F.3d 762 (7th Cir. 2007) ..........................................................................15

*Motorola Credit Corp. v. Uzan*,
  561 F.3d 123 (2d Cir. 2009) ...........................................................................13

*N. Mariana Islands v. Millard*,
  287 F.R.D. 204 (S.D.N.Y. 2012) ....................................................................15

*NML Capital, Ltd. v. Republic of Argentina*,
  699 F.3d 246 (2d Cir. 2012) ("*NML I*") ...........................................................5

*NML Capital, Ltd. v. Republic of Argentina*,
  727 F.3d 230 (2d Cir. 2013) ("*NML II*") ............................................... *passim*

*Ofosu v. McElroy*,
  98 F.3d 694 (2d Cir. 1996) .............................................................................13

*Republic of Austria v. Altmann*,
  541 U.S. 677 (2004) .......................................................................................17

*Reynolds v. Int'l Amateur Athletic Fed'n*,
  505 U.S. 1301 (1992) .....................................................................................15

# TABLE OF AUTHORITIES

**Page(s)**

*Sierra Club v. U.S. Corps. of Eng'rs*,
    732 F.2d 253 (2d Cir. 1984) .........................................................................16

*Tire Eng'g & Dist. L.L.C. v. Bank of China Ltd.*,
    740 F.3d 108 (2d Cir. 2014) .......................................................................16

*United States v. Swift & Co.*,
    286 U.S. 106 (1932)....................................................................................16

**Rules**

2d Cir. R. 31.2 ...................................................................................................12

Fed R. App. P. 2 .................................................................................................12

## **INTRODUCTION**

This latest salvo from Argentina and its allies—these motions to expedite appeals from the district court's July 28 Order—is just as meritless as Argentina's many previous efforts to evade responsibility for its own actions. The appeals should be briefed and argued on a normal schedule.

The discretionary relief of expedition would be particularly inappropriate here because Argentina is openly flouting the authority of the U.S. courts to whose jurisdiction it submitted. Argentina has done so even after solemnly advising the Supreme Court of the United States that, "[t]o be clear, . . . absent relief Argentina will comply with the injunctions." Reply Brief of Petitioner at 12-13, *Republic of Argentina v. NML Capital Ltd.*, No. 13-990 (U.S. May 27, 2014); *see also id.* at 2 ("Contrary to Respondents' assertions, absent relief Argentina will comply with the injunctions . . . .").

Since June 16, Argentine officials have issued numerous public statements railing against the U.S. courts generally and Judge Griesa personally and disputing the validity of the Injunctions, even though this Court affirmed them and the Supreme Court denied review. Argentina also announced a plan to evade the Injunctions, requiring immediate action by the district court. Then, just a week after this Court confirmed that the Injunctions were no longer stayed, Argentina brazenly attempted to make payment on the Exchange Bonds without a ratable

payment to Appellees.  As Judge Griesa promptly held, that attempted payment was blatantly "illegal" under the Injunctions.  What is more, these motions make clear that Argentina intends to attempt to make *yet another* illegal payment on September 30.  It takes nerve to beg this Court and opposing parties to depart from normal procedures for Argentina's benefit when Argentina has lied to the Supreme Court of the United States and shown contempt for any ruling with which it disagrees.

These motions for expedition also rest on the false assertion that Judge Griesa's July 28 Order somehow "extend[ed]" the Injunctions.  When they were issued, the Injunctions reached *all* "Exchange Bonds," including those issued pursuant to Argentine law.  Indeed, Citibank filed its motion for "Clarification or Modification" precisely *because* the plain terms of the Injunctions covered these bonds.  Argentina's and Citibank's obligations under the fully litigated, final, permanent Injunctions could not be clearer.

The district court nevertheless has granted a one-time reprieve allowing the June 30 payment to go through for Argentine-law, U.S.-dollar bonds.  Despite that act of grace, the district court in its July 28 Order *confirmed* that the Injunctions will continue to reach Argentine-law, U.S.-dollar Exchange Bonds going forward (and, by agreement of the parties, the Injunctions will *not* reach certain Argentine peso-denominated bonds).  The reach of the Injunctions is thus slightly narrower—

2

not broader—than it was when this Court twice affirmed them. Appellants are thus wrong to claim that expedition is necessary to allow *initial* appellate review of their contention that the Injunction cannot reach bonds that are paid initially in Argentina. Indeed, back on August 23, 2013, this Court *specifically rejected* the argument that the Injunctions should not reach bonds for which "the payment process" supposedly "takes place entirely outside the United States." *NML Capital, Ltd. v. Republic of Argentina*, 727 F.3d 230, 245 (2d Cir. 2013) ("*NML II*"). Expedition is not appropriate to re-litigate issues already addressed.

The expedition motions are also littered with factual misstatements suggesting that the September 30 payment involves various "fungible" Argentine-law, U.S.-dollar bonds—some of which "may" not be Exchange Bonds, and some of which "may" have been issued pursuant to Argentina's settlement with Repsol. There are only two series of Argentine-law, U.S.-dollar bonds with a September 30 payment (involving a grand total of $16 million). To our knowledge, *all of these bonds are indisputably Exchange Bonds*, and nothing in this record suggests otherwise. No payment on bonds bearing the supposedly confusing International Securities Identification Number ("ISIN") is due until December 31. In any event, any potential confusion is of Argentina's own making.

That brings us to Citibank's contention that it will be at "grave risk for civil, regulatory, and criminal liability" if it is not permitted to process the September 30

3

payment.  Mem. at 1-2.  Any such harm would result solely by virtue of Argentina's making a payment in violation of the Injunctions.  Argentina's propensity to act lawlessly does not undermine the Injunctions' validity, much less require expedited consideration of these appeals.  As this Court held in its August 23 opinion, "[t]his type of harm—harm threatened to third parties by a party subject to an injunction who avows not to obey it—does not make an otherwise lawful injunction 'inequitable.'"  *NML II*, 727 F.3d at 242.  Citibank's quarrel is with Argentina, not the Injunctions.

At bottom, these motions are little different from a request that this Court stay application of the Injunctions to Argentine-law, U.S.-dollar bonds pending appeal—that is, Appellants demand appellate review before the Injunctions take effect.  But neither Argentina nor Citibank asked the district court to stay the July 28 Order pending appeal, nor could any such request have been made with a straight face.  Argentina and its allies enjoyed a lengthy stay while these cases made two trips to this Court and the Supreme Court considered and denied two certiorari petitions.  Enough is enough.  A sovereign and its business partners—no less than any other litigants—are entitled to the consequences of their own actions.

## **BACKGROUND**

### A.    Past Proceedings

This Court is familiar with the facts of these cases.  Therefore, we set forth

4

below only those facts immediately relevant to the motion for expedition, and recent developments of which the Court may be unaware.

"[T]his is a contract case in which the Republic of Argentina refuses to pay certain holders of sovereign bonds issued under a 1994 Fiscal Agency Agreement" (the "FAA"). *NML II*, 727 F.3d at 237.  To make the bonds more marketable, "Argentina made a series of promises to the purchasers," including "that any disputes concerning the bonds could be adjudicated in the courts of New York" and that it would "treat the FAA Bonds at least equally with its other external indebtedness." *Id.*  And as this Court has now twice held, "Argentina breached its promise of equal treatment." *Id.* (discussing *NML Capital, Ltd. v. Republic of Argentina*, 699 F.3d 246 (2d Cir. 2012) ("*NML I*")).

As a remedy for that breach and to prevent future efforts by Argentina to evade its contractual obligations, the district court entered an Amended February 23, 2012, Order ("the Injunctions"), which directed that

> [w]henever the Republic pays any amount due under terms of the bonds or other obligations issued pursuant to the Republic's 2005 or 2010 Exchange Offers, or any subsequent exchange of or substitution for the 2005 and 2010 Exchange Offers that may occur in the future . . . , the Republic shall concurrently or in advance make a "Ratable Payment" to [Appellees].

Ex. A ¶ 2(a).[1]  Thus, a payment on any Exchange Bond triggered the ratable

---

[1] "Ex." refers to exhibits to the Declaration of Mark T. Stancil in support of this Opposition, filed herewith.

payment requirement.  The Injunctions further forbade Argentina from taking any steps to evade the Injunctions or diminish the district court's ability to supervise compliance.  *Id.* ¶ 4.  This Court has twice affirmed the Injunctions; this Court has also affirmed that financial institutions that process Exchange Bond payments are potentially subject to liability under Federal Rule of Civil Procedure 65(d)(2) if they facilitate a prohibited payment by Argentina.  *NML II*, 727 F.3d at 238-39.

The Supreme Court twice denied Argentina's certiorari petitions, first on October 7, 2013, and most recently on June 16, 2014.  With the latter denial, the stay this Court had entered pending further review automatically expired.  This Court entered an order confirming as much on June 18.

### B.  Argentina's Post-Denial Violations Of The Injunctions

Having no further avenues to attack the Injunctions, Argentina proceeded to denounce and violate them.  Just hours after the Supreme Court's ruling, Argentina's President took to the airwaves and declared that Argentina would not "be subjected to such *extortion*."  Ex. B at 5 (emphasis added).  She revealed that she had "instructed the Economy Ministry . . . to make available all the instruments . . . necessary for all those who have trusted in Argentina . . . to receive their money."  *Id.*  Argentina's Economy Minister, Axel Kicilloff, confirmed in a press release the next day:  "[W]e are initiating steps to carry out a debt exchange *to pay in Argentina under Argentine law*."  Ex. C at 1 (emphasis added).  On June 20, the

6

district court held that the announced plan to swap the Exchange Bonds to place them outside the court's reach violated the court's anti-evasion orders.

Argentina's next violation was even more brazen. On June 26, 2014, Argentina transferred $832 million—the amount required to satisfy its June 30 payment obligations on the Exchange Bonds—to banks that process Exchange Bond payments, without making a ratable payment to the Appellees. The district court ruled that the payment was in clear violation of the Injunctions and forbade the Indenture Trustee on certain of the Exchange Bonds (Bank of New York Mellon ("BNY")) from forwarding the payment. 6/27/14 Tr. at 23.

## C. Citibank's Motion For "Clarification Or Modification"

For obvious reasons, stemming from its long banking relationship with Argentina, Citibank has aligned itself with Argentina in this dispute. Citibank acted as a deal manager for the 2010 Exchange Offer; holds deposits in Argentina (according to recent reports) of approximately $2 billion; and has recently sought to represent the Republic in a new debt issuance. Exs. D, E. Recent reports also posit that Citibank stands to lose up to $80 million from Argentina's default on the Exchange Bonds. Ex. E. In keeping with Argentina's wishes, Citibank has voiced Argentina's sovereign-immunity arguments in various judicial proceedings and has resisted discovery relating to transactions between the Republic and its Argentine branch. *E.g.*, Exs. F, G. All such efforts failed.

7

Citibank's June 19 motion for "Clarification or Modification"—which gave rise to this appeal—is the most recent instance of Citibank's alignment with Argentina. Citibank sought an order declaring that the Injunctions do not cover any Argentine-law Exchange Bonds. Ex. H. Citibank could not point to any ambiguity in the Injunctions' language. To the contrary, Citibank *conceded* that those bonds were "Exchange Bonds." *Id.* at 4. Nonetheless, Citibank argued that the Injunction *should not* cover those bonds. *Id.*

On June 27, Judge Griesa temporarily agreed with Citibank—in part based on Citibank's suggestions that the Injunctions applied only to Exchange Bonds for which BNY is the trustee and that the bonds in question had previously been treated "completely differently" from the bonds that were subject to the Injunctions. Ex. I at 26.[2] Citibank's assertion was incomplete and misleading. By their express terms, the Injunctions applied to *all* Exchange Bonds, whatever the payee, whatever the governing law, and in whatever foreign currency they were paid.[3]

---

[2] Citibank also contended that these bonds were paid "entirely" in Argentina. Ex. H at 2, 4-6. In the course of proceedings before the district court, however, it was revealed that certain entities involved in payment on many of these bonds utilize bank accounts located in New York as part of the payment process. Ex. J (JPMorgan letter); *see* Ex. K at 4 (Euroclear motion).

[3] In response to Citibank's assertion that the Injunctions should not reach Exchange Bonds paid in Argentine pesos rather than a foreign currency, Appellees consented to orders permitting those payments.

8

Appellees sought partial reconsideration of Judge Griesa's June 27 decision. Appellees explained that the U.S. dollar-denominated bonds are "External Indebtedness" under the FAA and are Exchange Bonds, and that there was no equitable basis for an order that would, in effect, authorize Argentina to continue violating Appellees' rights under their bonds' Equal Treatment Provision.[4]  On July 22, the district court convened a hearing and took the matter under advisement.

On July 23, Citibank filed a letter raising an entirely new argument: that some Argentine-law, U.S.-dollar bonds are not Exchange Bonds because they were issued in April 2014 to settle claims following Argentina's expropriation of Repsol's[5] stake in YPF (an Argentine oil and gas firm).  Ex. L at 2-3.  When issuing the bonds to Repsol, Argentina made a voluntary choice to assign them the same ISIN used by one series of Argentine-law, U.S.-dollar Exchange Bonds.  *Id.* at 2.  Seeking to capitalize on Argentina's action, Citibank argued that the Injunctions should not apply to *any* Argentine-law, U.S.-dollar bonds because the

---

[4] Citibank's conclusory assertion that the "uncontroverted evidence and compelling legal argument" demonstrated that "the Amended Injunctions *should* not be applied to payments by Citibank Argentina on the Argentine Law Bonds" is false and beside the point.  Mem. at 9 (emphasis added).  The uncontroverted evidence is that the Injunctions *do* apply to payments by Citibank, and Citibank can point to no reason why the district court abused its discretion by refusing Citibank's request to modify the Injunctions.

[5] Repsol is a multinational energy company headquartered in Spain.

9

bonds it issued to Repsol with the recycled ISIN are "identical" to and "fungible" with earlier-issued Exchange Bonds.  *Id.*

On July 27, Argentina filed a letter with the district court claiming for the first time—without citation or explanation and without offering any reason why the issue had not been litigated earlier—that many more of the Argentine-law, U.S.-dollar bonds were not issued at the time of the 2005 or 2010 exchanges and thus were not Exchange Bonds at all.  Citibank and Argentina assert that it will be impossible to distinguish between the bonds issued at the time of the 2005 and 2010 exchanges and *any* of these bonds.

It is not necessary for purposes of these expedition motions to explain the numerous inadequacies in Appellants' description of the bonds issued to Repsol and other Argentine-law, U.S.-dollar bonds.  For now, suffice it to say that any potential confusion is of Argentina's own making and in no way undermines enforcement of the Injunctions.[6]  What *is* important for present purposes is that

---

[6] Contrary to Argentina's assertion, Appellees have never "concede[d]" that "most" holders of Argentine law, U.S. dollar bonds "do not hold Exchange Bonds that are even arguably subject to the Amended Injunctions."  Mem. at 9 (emphasis omitted).  There is no evidence in this record supporting such a sweeping assertion; we have only Argentina's self-serving, unexplained, and untested *ipse dixit*.  Appellees cannot simply accept Argentina's representation, particularly since Argentina itself has previously characterized these bonds as Exchange Bonds, and this contrary assertion was made for the first time more than two years after the Injunctions were first issued, after two hearings before the district court, and a full month after Citibank filed the motion for modification or clarification.

neither the bonds issued to Repsol nor the bonds referenced in Argentina's July 27 letter have a payment due on September 30. The only Argentine-law, U.S.-dollar bonds payable on September 30 are two series (ISINs ARARGE03E097 and ARARGE03G704) that are indisputably Exchange Bonds covered by the Injunctions. The next payment on the bonds issued to Repsol and other Argentine-law, U.S.-dollar bonds is due December 31.[7]

### D. The July 28 Order

"[N]ot wishing to upset the settlement with Repsol," and for "th[at] reason only," the district court on July 28 entered an order "allow[ing a] one-time pay-ment on the [Argentine-law,] dollar[-]denominated exchange bonds." Ex. M at 4 (July 28 Order). Thus, the June 30 payment on Argentine-law, U.S.-dollar bonds was processed. The district court rescinded its modification of the Injunctions effective after July 30, however, leaving the Injunctions applying to Argentine-law, U.S.-dollar bonds. *Id.* The end result is that the Injunctions continue to cover the Argentine-law, U.S. dollar-denominated Exchange Bonds.

Argentina and Citibank appealed the July 28 Order and now seek to expedite

---

[7] Argentina's claim that "beneficial holders of $8.4 billion dollars of dollar-denominated Argentine Law Bonds are threatened with not receiving their payments on their performing bond interests unless the July 28 Order is reversed by September 30, 2014" (Mem. at 9) is an outright falsehood. The only such bonds with a September 30 payment are the Exchange Bonds identified above, with a total face amount of $1.3 billion. As noted above, a $16 million interest payment is due on these bonds by September 30.

11

these cases for briefing, argument, and decision before September 30.

## ARGUMENT

Contrary to Appellants' assertions, it is not the "practice of this Court" to expedite any appeal, merely because one party deems it "urgent." Mem. at 10; *see* 2d Cir. R. 31.2 (allowing expedited appeals only for threshold dismissals). Instead, such an action requires this Court to "suspend" its Ordinary Rules, which may be done only "to expedite its decision or for other good cause." Fed R. App. P. 2. Appellants—neither of which even attempted to seek a stay of the July 28 Order— cannot establish such cause.

## I.   This Court Should Not Grant Discretionary Relief To A Serial Violator Of U.S. Court Orders

The first and most obvious reason to deny expedition is that Argentina has shown complete disregard for the orders of the U.S. courts to whose jurisdiction it has submitted. Argentina's conduct over the past 57 days has been outrageous. As detailed above, just hours after the Supreme Court denied certiorari, Argentina announced plans to evade U.S. court orders, in direct contradiction to its promises to the Supreme Court and in direct violation of the Injunctions. On June 27, Argentina attempted to make an $832 million payment on the Exchange Bonds, again in blatant violation of the Injunctions. Argentina has openly accused Judge Griesa personally of bias and incompetence, and later trained its fire on the Special Master appointed to facilitate settlement discussions. Most recently, Argentina has

12

issued public notices urging Exchange Bondholders and entities that process Exchange Bond payments—including Citibank—*not to respect the Injunctions* and to file lawsuits in foreign jurisdictions or take other action to undermine the efficacy of U.S. court orders. Tellingly, in respons to Citibank's prediction that Argentina will attempt to make another illegal payment on September 30, Argentina says nothing.

Argentina now asks this Court for the discretionary relief of expedition. Chutzpah is no substitute for merit. Whatever the equities might be were Argentina willing to comply with court orders, "they are changed by [its] non-cooperation with a system from which [it] demands elaborate procedural deference." *Ofosu v. McElroy*, 98 F.3d 694, 699 (2d Cir. 1996). The law "closes the doors of a court of equity to one tainted with inequitableness or bad faith relative to the matter in which he seeks relief." *Motorola Credit Corp. v. Uzan*, 561 F.3d 123, 129 (2d Cir. 2009) (quotation marks omitted). Argentina bears all the badges of bad faith that this Court has recognized. It has "flat-out refus[ed] to comply with the District Court's lawful orders." *Id.* at 128. It has "time and again deployed [its] lawyers to raise legal roadblocks to the enforcement of the judgment against [it]." *Id.* at 127. It has "persistently endeavored to evade the lawful jurisdiction of the District Court and undermine its careful and determined work." *Id.* Argentina's demonstrated pattern of complete contempt for court orders is

13

more than sufficient reason to deny the request for expedition.

## II.    There Is No Need to Expedite This Appeal

In any event, there is no need for expedition.  Citibank makes the dire prediction that "[i]f Citibank Argentina does not make payment [on September 30] both the bank and its employees will be at grave risk for civil, regulatory, and criminal liability."  Mem. at 1-2.  That argument is neither supported by the factual record nor legally relevant to whether the appeal should be expedited.

*First*, the factual record does not reflect that Citibank faces some Hobson's choice on September 30 of an Argentine jail or an American contempt finding.  Argentina owes approximately $182 million on various series of Exchange Bonds on September 30.  Less than ten percent of that—approximately $16 million—is payable on Argentine-law, U.S.-dollar bonds.  Citibank does not identify the portion of that $16 million for which it serves as custodian, preferring instead to convey the false impression that hundreds of millions or billions of dollars are at stake.  Based on Citibank's claims regarding the June 30 payment, however, it is likely no more than $6 million.

Critically, *none of the $16 million due on September 30* is owed on a bond issued to Repsol or any of the other Argentine-law, U.S.-dollar bonds that Argentina belatedly claimed are not Exchange Bonds.  To our knowledge, 100% of the September 30 payment on Argentine-law, U.S.-dollar bonds is owed on

14

Exchange Bonds indisputably covered by the Injunctions, and there is no basis in the record to conclude otherwise.  Only bonds that indisputably are Exchange Bonds—and no bonds that Argentina contends are not Exchange Bonds—will be paid.  Argentina and Citibank can respect the Injunctions with confidence, should they choose to do so.

*Second*, Citibank's only argument that this case should be expedited is an unsupported assertion that it will face conflicting obligations if Argentina were to continue to violate the Injunctions.  But this Court's August 23, 2013, decision held that "[t]his type of harm—harm threatened to third parties by a party subject to an injunction who avows not to obey it—does not make an otherwise lawful injunction 'inequitable'" and that "Argentina's threats to punish third parties [do not] dictate the availability or terms of relief under Rule 65."  *NML II*, 727 F.3d at 242 (citing *Reynolds v. Int'l Amateur Athletic Fed'n*, 505 U.S. 1301, 1302 (1992)); *see also Lake Shore Asset Mgmt. Ltd. v. CFTC*, 511 F.3d 762, 765 (7th Cir. 2007) (The creation of inconsistent obligations by the "laws of other nations" might "have been a reason to write a different injunction" but "is *not* a reason to disobey an injunction actually issued.").  Thus, Citibank has no legally cognizable claim of imminent harm.

In any event, Citibank fails to mention that its contracts with Argentina contain provisions that expressly relieve it from liability taken under compulsion of

a court order.[8]  Even if Argentina refuses to honor those protections, Citibank has only itself to blame.  "[I]t is hardly uncommon that a large corporation, by doing business in many jurisdictions, subjects itself to potentially conflicting laws."  *N. Mariana Islands v. Millard*, 287 F.R.D. 204, 214 n.75 (S.D.N.Y. 2012); *see also Tire Eng'g & Distrib. L.L.C. v. Bank of China Ltd.*, 740 F.3d 108, 117 (2d Cir. 2014) ("[C]ourts in New York have suggested that the risk of double liability is assumed as part of the business of a bank.") (quotation marks omitted).

## III.  Appellants Will Not Be Prejudiced By The Absence Of Expedition Because Their Appeal Is Without Merit

It is well-established law that "a court may modify a final or permanent injunction only where conditions have so changed as to make such relief equitable, *i.e.*, a significant change in the law or facts."  *Sierra Club v. U.S. Corps. of Eng'rs*, 732 F.2d 253, 256 (2d Cir. 1984); *id.* at 256-57 (discussing *United States v. Swift & Co.*, 286 U.S. 106, 114 (1932)).  A district court's decision regarding such a matter "will not be disturbed on appeal, absent a showing that the court abused its discretion."  *Id.* at 257.  Appellants' claim that expedition is necessary because the July 28 Order was an abuse of the district court's wide discretion is baseless.

As a threshold matter, Appellants repeatedly state that the July 28 Order

---

[8] These contracts were discussed at length before the district court.  Because certain documents are subject to pre-existing protective orders, however, they are not attached to this opposition.  Appellees will gladly provide them under appropriate protective conditions at the Court's request.

"expand[ed]" the Injunctions beyond the reach that they had when this Court twice

affirmed them. Not so—not even close. From day one, the Injunctions have

expressly applied to *all* Exchange Bonds, including those issued under Argentine

law—which is why Citibank filed its motion for "Clarification or Modification" in

the first place. The July 28 Order rebuffed Citibank's bid to *remove* Argentine-

law, U.S.-dollar bonds from the Injunctions.

As for the merits of these appeals, none of Appellants' arguments—which

have been made, remade, recycled, and regurgitated by numerous parties and amici

throughout this case—shows that the district court abused its discretion.

*First*, if Citibank's argument that third parties acting outside the United

States may not be bound under Rule 65 sounds familiar, that is because this Court

*rejected* that contention in its August 23 decision. Even if "the payment process

for their securities takes place entirely outside the United States," the Injunctions

are entirely proper. *NML II*, 727 F.3d at 244. That is because "a 'federal court

sitting as a court of equity having personal jurisdiction over a party [here,

Argentina] has power to enjoin him from committing acts elsewhere.'" *Id.* at 243

(quoting *Bano v. Union Carbide Corp.*, 361 F.3d 696, 716 (2d Cir. 2004)); *City of

N.Y. v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 146 n.30 (2d Cir. 2011).

*Second*, Citibank cannot resurrect these moribund *situs* arguments by re-

couching them under the so-called "act of state" doctrine. No party ever raised the

act-of-state doctrine in either of the two prior appeals.  In any event, this doctrine does not "'preclude judicial resolution of all commercial consequences' that result from acts of foreign sovereigns performed within their own borders."  *Allied Bank Int'l v. Banco Credito Agricola de Cartago*, 757 F.2d 516, 521 (2d Cir. 1985).  And it does not apply where acts of the sovereign nation have consequences in the United States, *id.*, or where the foreign nation has acted in a commercial rather than a sovereign capacity, *Alfred Dunhill of London, Inc. v. Republic of Cuba*, 425 U.S. 682, 705-06 (1974) (plurality); *cf. Republic of Austria v. Altmann*, 541 U.S. 677, 700 (2004).

*Third*, as explained above, the September 30 payment creates no potential confusion regarding Repsol bonds or the other Argentine-law, U.S.-dollar bonds that Argentina (belatedly) claims are not Exchange Bonds.  To our knowledge (and we are aware of nothing in the record to the contrary), the only Argentine-law, U.S.-dollar bonds payable on September 30 are indisputably Exchange Bonds with distinct ISINs.  In any event, far from invalidating the Injunctions, Argentina's course of conduct with respect to the Repsol bonds and other unnamed securities purportedly issued under the same decree as the Exchange Bonds further demonstrates *why* the district court did not abuse its discretion.  Argentina created the situation of which Appellants now complain by issuing bonds supposedly "fungible" with certain of the Exchange Bonds.  Moreover, the Repsol bonds were

issued more than two years after the Injunctions were entered, and Argentina itself was publicly warning as early as 2005 that holders of defaulted debt might attempt to interfere with payments of restructured debt. Any confusion or inconvenience falls squarely on Argentina's own head.

There are still further reasons why these appeals will fail, but these brief responses suffice to disprove Appellants' contention that expedition is necessary because they are sure to prevail when these appeals are heard.

## IV. Expedition Is Not In The Public Interest And Would Severely Prejudice Appellees

Allowing Appellants to re-litigate the propriety and scope of the Injunctions on an expedited basis will harm the public interest and impose serious and unfair burdens on Appellees.

*First*, the public's interests in judicial economy and consistency of judgment argue against expedition. Deciding this case by September 30 would consume vast judicial resources, undoubtedly displacing other litigants who—unlike Argentina— have shown respect for the judicial system. Caution here is particularly important because Argentina would seize upon any favorable ruling as a roadmap for evading the Injunctions altogether, not just as to current Argentine-law, U.S.-dollar bonds. Argentina's president and cabinet-level officials have announced plans to swap Exchange Bonds into Argentine-law instruments payable beyond the reach of U.S. courts, and the district court correctly declared such a plan to be in violation of the

19

Injunctions.  A decision in Argentina's favor here would embolden further evasion attempts, so this case warrants careful deliberation, not massive expedition.

*Second*, and relatedly, expedition would impose tremendous burdens on Appellees.  Drafting response briefs within two weeks is an enormous undertaking, for which Appellees are customarily afforded 90 days in this Circuit.  That burden would be particularly onerous here, where Appellees would be forced to refute numerous misstatements and half-truths, many regarding information within Argentina's—not Appellees'—possession.  That is to say nothing of the nearly constant attention required to respond to Argentina's attempts to evade and denigrate the Injunctions or the other cases for which Appellees' counsel are responsible.  Other clients and personal plans must sometimes take a back seat to real emergencies—but that is not this appeal.

## V.   Appellees Consent To Appellants' Motion To Consolidate Their Appeals

Although Appellants did not seek Appellees' position on consolidating these matters, Appellees agree that these appeals present similar issues and should be consolidated.

## CONCLUSION

For the foregoing reasons, Appellants' motions to expedite these appeals should be denied.  Citibank's motion to consolidate should be granted.

20

Dated: August 12, 2014

Respectfully submitted,

By: /s/ Mark T. Stancil

Edward A. Friedman
Daniel B. Rapport
FRIEDMAN KAPLAN SEILER &
ADELMAN LLP
7 Times Square
New York, N.Y. 10036
(212) 833-1100

Roy T. Englert, Jr.
Mark T. Stancil
ROBBINS, RUSSELL, ENGLERT,
ORSECK, UNTEREINER & SAUBER
LLP
1801 K Street, N.W.
Washington, D.C. 20006
(202) 775-4500

*Counsel for Plaintiffs-Appellees Aurelius Capital Master, Ltd., Aurelius
Opportunities Fund II, LLC, ACP Master, Ltd., and Blue Angel Capital I LLC*

Robert A. Cohen
DECHERT LLP
1095 Avenue of the Americas
New York, N.Y. 10036
(212) 698-3500

Theodore B. Olson
Matthew D. McGill
Jason J. Mendro
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, D.C. 20036-5306
(202) 955-8500

*Counsel for Plaintiff-Appellee NML Capital, Ltd.*

Leonard F. Lesser
SIMON LESSER, P.C.
355 Lexington Avenue
New York, NY 10017
(212) 599-5455

Michael C. Spencer
MILBERG LLP
One Pennsylvania Plaza
New York, NY 10019
(212) 594-5300

*Counsel for Plaintiff-Appellee
Olifant Fund, Ltd.*

*Counsel for Plaintiffs-Appellees Pablo
Alberto Varela et al.*