UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------- x

NML CAPITAL, LTD.,                   :

                                :   08 Civ. 6978 (TPG)

            Plaintiff,      :   09 Civ. 1707 (TPG)

                                :   09 Civ. 1708 (TPG)

         v.               :

                                :

THE REPUBLIC OF ARGENTINA,   :

                                :

           Defendant.    :

------------------------------------------------------- x

                                :

AURELIUS CAPITAL MASTER, LTD. and :

ACP MASTER, LTD.,          :   09 Civ. 8757 (TPG)

                                :   09 Civ. 10620 (TPG)

            Plaintiffs,     :

                                :

         v.               :

                                :

THE REPUBLIC OF ARGENTINA,   :

                                :

           Defendant.    :

                                :

------------------------------------------------------- x

                                :

AURELIUS OPPORTUNITIES FUND II, LLC :

and AURELIUS CAPITAL MASTER, LTD.,  :   10 Civ. 1602 (TPG)

                                :   10 Civ. 3507 (TPG)

            Plaintiffs,     :

                                :

         v.               :

                                :

THE REPUBLIC OF ARGENTINA,   :

                                :

           Defendant.    :

                                :   **(captions continued on next page)**

------------------------------------------------------- x

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION TO COMPEL DEUTSCHE BANK, JP MORGAN AND BBVA TO PRODUCE DOCUMENTS CONCERNING THE BONAR 2024 BONDS

```
------------------------------------------------ x
AURELIUS CAPITAL MASTER, LTD. and          :
AURELIUS OPPORTUNITIES FUND II, LLC,       :      10 Civ. 3970 (TPG)
                                           :      10 Civ. 8339 (TPG)
                   Plaintiffs,             :
                                           :
           v.                              :
                                           :
THE REPUBLIC OF ARGENTINA,                 :
                                           :
                   Defendant.              :
------------------------------------------------ x
BLUE ANGEL CAPITAL I LLC,                  :
                                           :
                   Plaintiff,              :      10 Civ. 4101 (TPG)
                                           :      10 Civ. 4782 (TPG)
           v.                              :
                                           :
THE REPUBLIC OF ARGENTINA,                 :
                                           :
                   Defendant.              :
------------------------------------------------ x
OLIFANT FUND, LTD.,                        :
                                           :
                   Plaintiff,              :      10 Civ. 9587 (TPG)
                                           :
           v.                              :
                                           :
THE REPUBLIC OF ARGENTINA,                 :
                                           :
                   Defendant.              :
------------------------------------------------ x
PABLO ALBERTO VARELA, et al.,              :
                                           :
                   Plaintiff,              :      10 Civ. 5338 (TPG)
                                           :
           v.                              :
                                           :
THE REPUBLIC OF ARGENTINA,                 :
                                           :
                   Defendant.              :
------------------------------------------------ x
```

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

PRELIMINARY STATEMENT .................................................................................................1

BACKGROUND .....................................................................................................................4

    A.    Argentina's Payments on Exchange Bonds Violate
the Pari Passu Clause and the Injunction .................................................4

    B.    Argentina Further Violates the Pari Passu Clause
by Issuing Additional External Indebtedness ........................................5

    C.    Plaintiffs Amend and Supplement their Complaints To
Address the Republic's Further Violations of the Pari Passu Clause ....................9

    D.    Plaintiffs Seek Discovery from Third Parties Involved
in the Issuance of the BONAR 2024 Bonds ........................................10

    E.    The Meet-and-Confer Sessions with the Subpoena
Recipients Do Not Result in a Resolution .............................................12

ARGUMENT ........................................................................................................................14

    I.    JPMorgan And Deutsche Bank Should Be Ordered
To Produce All Documents Responsive To
The Narrowly-Tailored Requests In The Subpoenas................................14

    II.    JPMorgan, Deutsche Bank And BBVA Have
No Basis For Redacting Highly Relevant Information
Concerning Names And Addresses Of The Offerees ................................19

    III.    Deutsche Bank And BBVA Cannot Properly Refuse
To Produce Documents Within Their Possession,
Custody And Control On The Basis That Such
Documents Are Located Outside Of New York .......................................21

CONCLUSION.....................................................................................................................24

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Application to Enforce Admin. Subpoenas Duces Tecum of the S.E.C. v. Knowles*,
    87 F.3d 413 (10th Cir. 1996) ....................................................................22

*Cooper Indus., Inc. v. British Aerospace, Inc.*,
    102 F.R.D. 918 (S.D.N.Y. 1984) ...............................................................23

*Eitzen Bulk A/S v. Bank of India*,
    827 F. Supp. 2d 234 (S.D.N.Y. 2011).........................................................24

*Global Tech., Inc. v. Royal Bank of Canada*,
    2012 WL 89823 (N.Y. Sup. Ct. Jan. 11, 2012) .........................................24

*Gucci Am., Inc. v. Weixing Li*,
    768 F.3d 122 (2d Cir. 2014).................................................................21, 22

*Gucci Am., Inc. v. Weixing Li*,
    No. 10 Civ. 4974 (RJS), 2015 WL 5707135 (S.D.N.Y. Sept. 29, 2015)..........22, 24

*Motorola Credit Corp. v. Uzan*,
    288 F. Supp. 2d 558 (S.D.N.Y. 2003).........................................................24

*NML Capital, Ltd. v. Republic of Argentina*,
    699 F.3d 246 (2d Cir. 2012)..........................................................................4

*Oppenheimer Fund, Inc. v. Sanders*,
    437 U.S. 340 (1978).....................................................................................15

*Palumbo v. Shulman*,
    No. 97 Civ. 4314, 1998 WL 720668 (S.D.N.Y. Oct. 13, 1998) .................15

*In re Parmalat Secs. Litig.*,
    258 F.R.D. 236 (S.D.N.Y. 2009) ...............................................................19

*Tiffany (NJ) LLC v. Qi Andrew*,
    276 F.R.D. 143 (S.D.N.Y. 2011) ...............................................................23

*United States v. First Nat'l City Bank*,
    396 F.2d 897 (2d Cir. 1968)........................................................................23

*Vera v. Republic of Cuba*,
    No. 12 Civ. 1596, 2015 WL 1244050 (S.D.N.Y. Mar. 17, 2015) ..............21

**Other Authorities**

Federal Rule of Civil Procedure 26 ......................................................................15, 19

Federal Rule of Civil Procedure 37 ..........................................................................15

Federal Rule of Civil Procedure 45 ..........................................................................15

Plaintiffs NML Capital, Ltd., Aurelius Capital Master, Ltd., Aurelius Opportunities Fund II, LLC, ACP Master, Ltd., Blue Angel Capital I LLC, Olifant Fund, Ltd., and Pablo Alberto Varela, et al. (collectively "Plaintiffs") respectfully submit this Memorandum of Law in support of their motion pursuant to Rules 26, 37, and 45 of the Federal Rules of Civil Procedure to compel production of documents responsive to subpoenas served on non-parties Deutsche Bank AG, Deutsche Bank Americas Holding Corp., Deutsche Bank Securities, Inc., Deutsche Bank Trust Company Americas, and Taunus Corporation (collectively "Deutsche Bank"); JPMorgan Chase & Co., JPMorgan Chase Bank, N.A., and J.P. Morgan Securities, LLC (collectively "JPMorgan"); and Banco Bilbao Vizcaya Argentaria, S.A., BBVA Compass Bancshares, Inc., and BBVA Securities, Inc. (collectively "BBVA").

## PRELIMINARY STATEMENT

Plaintiffs are holders of bonds issued by the Republic of Argentina (the "Republic") pursuant to a Fiscal Agency Agreement dated October 19, 1994 (the "FAA" (Ex. 1)).[1] As this Court and the Second Circuit have held on multiple occasions, paragraph 1(c) of the FAA (the "Pari Passu Clause") requires the Republic to rank its payment obligations on Plaintiffs' bonds at least equally with all the Republic's other External Indebtedness.  In 2012, to address the Republic's repeated violation of the Pari Passu Clause, the Court entered an injunction (the "Injunction") that prohibits the Republic from making any payment on one category of External Indebtedness—bonds issued in the Republic's 2005 and 2010 Exchange Offers—without making a ratable payment to Plaintiffs. (Amended Feb. 23, 2012 Orders (Ex. 2)).

---

[1] Unless otherwise specified, all exhibits are annexed to the accompanying Declaration of Marc G. Farris ("Farris Decl."), and all references to docket numbers are made with respect to Case No. 08 Civ. 6978.

Since then, the Republic issued new External Indebtedness—Bonos de la Nación Argentina en Dólares Estadounidenses 8.75% 2024 ("BONAR 2024 Bonds")—and made payments on that new debt, again in blatant, deliberate disregard for its obligations under the Pari Passu Clause.

Accordingly, Plaintiffs sought and received leave to amend and supplement their Complaints to add claims for specific enforcement of their contractual rights with respect to the BONAR 2024 Bonds and other External Indebtedness.[2]  In the Amended Complaints, Plaintiffs pleaded detailed and specific allegations demonstrating that the BONAR 2024 Bonds—which were offered and sold to investors throughout the world—are, in fact, External Indebtedness subject to the Pari Passu Clause.[3]  The Republic, however, claims otherwise, contending that the BONAR 2024 Bonds are Domestic Foreign Currency Indebtedness ("DFCI"), not External Indebtedness, because they were purportedly "offered exclusively" in Argentina.  In support of that claim, Argentina has contended, among other things, (a) that it marketed the BONAR 2024 Bonds only in Argentina and (b) that it has no involvement in the aspects of the Bond issuances that placed the Bonds in the hands of investors around the world.

Plaintiffs are entitled to contest the Republic's assertions, and are therefore entitled to pursue discovery necessary to present a full record to the Court demonstrating that Argentina did not offer the Bonds exclusively in Argentina, such that they are in fact External

---

[2]  Plaintiffs Pablo Alberto Varela, et al., did not amend their complaint because it already alleged that any payments by the Republic on any of its External Indebtedness, such as the BONAR 2024 Bonds, would violate the Pari Passu Clause.  (*See* Am. Compl., Dkt No. 41 in Case No. 10 Civ. 5338.)

[3]  The FAA defines External Indebtedness as debt payable in a currency other than Argentine pesos, and the BONAR 2024 Bonds plainly fit this description.  (FAA at 16.)  The only exception is for Domestic Foreign Currency Indebtedness ("DFCI"), which consists of four specific categories of bonds:  (1) pre-1994 debt issued under specifically-enumerated Argentine decrees; (2) "any indebtedness issued in exchange, or as replacement" for debt issued under those decrees; (3) debt "offered exclusively within the Republic of Argentina"; and (4) debt issued in exchange for Argentine peso-denominated debt.  (*Id.* at 17.)  With regard to the BONAR 2024 Bonds, only the third prong—debt "offered exclusively within the Republic of Argentina"—is at issue.

Indebtedness.  To that end, Plaintiffs served subpoenas *duces tecum ad testificandum* (the "Subpoenas") on certain financial institutions that were involved in the Republic's offering of BONAR 2024 Bonds, including Deutsche Bank, JPMorgan, and BBVA (the "Banks").  (*See* Exs. 3-5).

Plaintiffs narrowly tailored the Subpoenas to call for information relevant to the central question of whether the BONAR 2024 Bonds are External Indebtedness.  This, of course, includes information concerning how, where and to whom the Republic and the Banks marketed and sold the Bonds outside of Argentina. But of at least equal importance, given the Republic's specious assertion that the Banks' activities were unrelated to the Republic's offers is information concerning the Banks' communications and dealings with the Republic and the Republic's third-party allies about the Bond issuances.  Discovery from the Banks on these issues is particularly important, given the Republic's history in this litigation of failing to comply with its discovery obligations.[4]

Rather than comply with the Subpoenas, the Banks have raised a host of meritless objections.  They refuse to produce responsive documents concerning how the BONAR 2024 Bond offerings were planned and conducted.  They improperly seek to redact the names and addresses of offerees—information that bears on the location of the offering and also would enable plaintiffs to identify and seek additional relevant information from such offerees.  And they refuse to produce documents within their possession, custody or control located outside of New York.  Plaintiffs have repeatedly met with these Subpoena recipients but have been unable to resolve the issues presented by this motion. (*See* Farris Decl. ¶¶ 3-5.)

---

[4]  On August 13, 2015, the Court sanctioned the Republic for its failure to comply with its discovery obligations and the Court's discovery orders.  (Aug. 13, 2015 Order [Dkt. No. 814].)

3135432.1

**BACKGROUND**

A.     **Argentina's Payments on Exchange Bonds Violate the Pari Passu Clause and the Injunction**

After Argentina defaulted on its debts in 2001, it offered bondholders take-it-or-leave-it exchange offers in 2005 and 2010 (the "Exchange Offers"), to trade their defaulted bonds for new bonds worth less than 30 cents on the dollar ("Exchange Bonds"), and coerced participation by threatening never to make payments to bondholders who declined to participate. Plaintiffs did not participate in the Exchange Offers, and Argentina has accordingly refused to make any payment on their FAA bonds, while making regular payments on the Exchange Bonds. *NML Capital, Ltd. v. Republic of Argentina*, 699 F.3d 246, 260 (2d Cir. 2012) ("*NML I*").

In the Pari Passu Clause of the FAA, Argentina promised that Plaintiffs' bonds "will constitute . . . direct, unconditional, unsecured and unsubordinated obligations of the Republic and shall at all times rank *pari passu* and without any preferences among themselves," and that the "payment obligations of the Republic under [Plaintiffs' bonds] shall at all times rank at least equally with all its other present and future unsecured and unsubordinated External Indebtedness."  (FAA at 2.)  Subject to certain exceptions, the FAA defines "External Indebtedness" to include obligations payable in a currency other than the lawful currency of the Republic.  That definition indisputably covers U.S. dollar-denominated bonds (as well as bonds denominated in currencies other than the Argentine peso) issued in the Exchange Offers (the "Exchange Bonds").  Accordingly, when Argentina made payments on those bonds but refused to satisfy its payment obligations currently due under Plaintiffs' bonds, it breached the Pari Passu Clause.  (Dec. 7, 2011 Order at 4 [Dkt. 202].)  To remedy such breaches, the Court in 2012 issued the Injunction, which prohibits Argentina from making payments on Exchange Bonds unless it also makes a "Ratable Payment" on Plaintiffs' bonds.  (Injunction at ¶ 2.)

Argentina has persistently attempted to disobey and circumvent the Injunction. For example, days after the stay of the Injunction pending appeal was lifted, Argentina blatantly violated the Injunction by attempting to make $539 million payment to holders of Exchange Bonds without making a ratable payment to Plaintiffs.  (*See* Aug. 6, 2014 Order at 1 [Dkt. 633].) After its attempted payment was thwarted, the Republic proposed to replace the trustee for the Exchange Bonds in order to make payments in violation of the Injunction, and to implement a swap of the Exchange Bonds to avoid the Injunction.  (*See* Law 26,984 (Ex. 42) at Arts. 3, 7.) On September 29, 2014, after being apprised of these actions, the Court found the Republic in civil contempt for violation of the Injunction.  (Sept. 29, 2014 Order at 3 [Dkt. 687].)

**B.      Argentina Further Violates the Pari Passu Clause by Issuing Additional External Indebtedness**

Notwithstanding the Injunction, the Republic has continued to violate the Pari Passu Clause by making payments on new External Indebtedness issued after the Court's entry of the Injunction—including the BONAR 2024 Bonds.

Argentina first issued BONAR 2024 Bonds—$3.25 billion in May 2014—as compensation to settle non-Argentine claims asserted by the Spanish oil company Repsol S.A., in lawsuits in New York and Spain and in an international arbitration under United Nations Commission on International Trade Law ("UNCITRAL") Rules commenced pursuant to a Spanish-Argentine treaty.  The bonds were offered to investors around the world because, under the terms of the settlement agreement, Argentina's obligation to Repsol would only be satisfied when Repsol transferred the bonds.  (Repsol Settlement Agreement (Ex. 6) at 8; Repsol Official Notice, Feb. 25, 2015 (Ex. 7)). ██████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████████

██  To facilitate the offering to international investors, Argentina agreed that the bonds would

clear through Euroclear because investors outside of Argentina would want the bonds to be

clearable through an international clearing system.  (Repsol Settlement Agreement at 51).  The

bonds have since actively traded on markets in the United States and Germany.  (*See, e.g.*, Börse

Frankfurt Report (Ex. 9) at 1.)

In December 2014, the BONAR 2024 Bonds were again offered outside

Argentina—with the active participation of Argentine officials.  Meetings were held in New

York and London—attended by Argentina's Secretary of Finance, Pablo Lopez.  At the

meetings—███████████████████████, with major non-Argentine international

investment firms from the U.S. and U.K, including Marathon Asset Management, Blackrock,

Centerbridge and Knighthead Capital Management in attendance (*see* Answer to Second

Amended and Supplemental Complaint, at ¶ 96 [Dkt. 818]; ████████████████████

██████████████████)—an additional issuance of approximately $661 million of

BONAR 2024 Bonds was actively marketed outside Argentina to non-Argentine

investors.   Subsequent press reports confirmed that New York-based Fintech Advisory, Inc.,

among others, purchased bonds from Argentina.  (*See* Javier Blanco, *No Relief in 2015: Debt

issue raises less than 10% of what was hoped*, La Nación, Dec. 13, 2014 (Ex. 13)).

Argentina attempted a third international offering of $1.4 billion in BONAR 2024

Bonds in February 2015—again with non-Argentine entities marketing the bonds outside of

Argentina, and non-Argentine offerees as prospective purchasers.  ████████████████

████████████████████████████████████████████

████████████████████████████████████████████

3135432.1

███  .  Argentina "suspended" this attempted issuance on February 26, 2015, after this Court

compelled JPMorgan and Deutsche Bank to provide discovery about the transaction.[5] ██████

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

███████████████████████████████████████████  .  ████████████

███████████████████████████████  , Argentina resumed the issuance

process by announcing on April 21 that it would issue more BONAR 2024 Bonds, in a

transaction that would settle just two days later.  (*See* Ministry of the Economy Press Release,

"Invitation to Bid" (Ex. 18); Joint Resolution 31/2015 & 10/2015 (Ex. 19)).  Deutsche Bank ██

██████████████████████████  solicited investors (including some of the Plaintiffs)

for orders, worked with New York-based firms to ensure the success of the offering, and

eventually placed more than $1 billion of bonds with investors outside of Argentina.  (Answer to

Second Amended and Supplemental Complaint, at ¶ 101 [Dkt. 818]; Bloomberg Message from

Deutsche New York Syndicate, Apr. 21, 2015 (Ex. 20); Paola Quain, *Pepa and Szpigiel, the*

*operators behind the "financial summer,"* Perfil, May 3, 2015 (Ex. 21); ██████████████

██  ).

██████████████████████████████████████████████████████

██████████████████████████████████████████████

Argentina's foreign reserves increased by $1.247 billion, consistent with reports that 90% of the

BONAR 2024 Bonds had been purchased by foreign investors.  ████████████████

████████████████████████  ; Alejandro Vanoli, Twitter, Apr. 23, 2015, 11:24 AM,

---

[5]  This was not the first time the Court needed to compel Deutsche Bank to respond to Plaintiffs' discovery requests.
In 2011, the Aurelius and Blue Angel plaintiffs served subpoenas on Deutsche Bank for information about assets of
the Republic.  Deutsche Bank only began production in 2013, after the Court ordered compliance.  (Sept. 25, 2013
Order [Dkt. No. 484].)

https://twitter.com/VanoliAlejandro/status/591306648511246337 (Ex. 24)).  Argentina's leaders

trumpeted the offering as evidence of the Republic's ability to tap the international markets, not

as an offering in Argentina.  Economy Minister Axel Kicillof gloated:  "It has long been said that

Argentina was isolated from the world, without access to the international markets; this

[offering] lays that idea to rest."  (*Kicillof: "The bids received for BONAR 24 exceeded*

*expectations,"* Prensa Argentina, Apr. 24, 2015 (Ex. 25)).  Argentina's President, Cristina

Fernandez de Kirchner, triumphantly declared that the country had "returned to the capital

markets at reasonable rates."  (*CFK: 'We'll Never Honour International Usury Or Scam,'*

Buenos Aires Herald, Apr. 28, 2015 (Ex. 26).)  The President of Argentina's Central Bank

similarly crowed:  "The most important thing is that Argentina has the chance to access the

markets."  (*Kicillof: "They must be annoyed,"* La Nación, Apr. 23, 2015 (Ex. 27).)[6]

       The Republic has argued that its self-imposed requirement that orders be formally

placed through "agents" registered with one of the Argentine stock exchanges—e.g., Deutsche

Bank S.A.—is dispositive of where the bonds were offered.  That argument defies reality—and,

in any event, just confirms the appropriateness of the discovery sought by Plaintiffs concerning

the role of the Banks in the offering.  To the extent local "agents" placed these orders, it was

because investors—largely located outside of Argentina—had told them they wanted to accept

the Republic's offer and buy bonds.  Indeed, Argentina told investors that they had to "address

---

[6]  The Republic understood that the issuances would only succeed if the offer was made to foreign investor ███
████████████████████████████████████████████████████████████████
█████████████████████████████████████████████ rgentina, therefore,
enacted regulations before the second and third issuances to facilitate international investors' receipt of their newly
purchased bonds.  (*See* CNV Regulations (Ex. 28), Art. 70 (requiring that purchasing agents hold newly purchased
securities denominated in foreign currency in an account for 72 hours before they can be transferred to the beneficial
owners); CNV Resolution, Dec. 10 2014 (Ex. 29), at Art. 1 (providing an exception to the 72-hour requirement
purchases that are part of "primary placement processes," such as new bond issuances).)  And according to press
reports, the latest offering "built up steam" when Argentina enacted an exception to the capital controls regulations,
opening a "channel that would open up access to bids in dollars from abroad."  (Ignacio Olivero Doll, *Bonar:
issuance built up steam thanks to the dollars from abroad*, Ámbito Financiero, Apr. 22, 2015 (Ex. 30).)

their expressions of interest" through the "agents."  (Ministry of the Economy Press Release, "Invitation to Bid;" *see also* Ministry of the Economy Press Release, "Announcement of Early Pay-off" (Ex. 31) at 7 (instructing investors in the December 2014 BONAR 2024 Offering to place bids through authorized brokers)).  Argentina cannot conceal the fact that the bonds were both offered and sold ***outside*** of Argentina by the mere expediency of laundering the international offering through local "agents."[7]

C.   <u>Plaintiffs Amend and Supplement their Complaints To</u>
<u>Address the Republic's Further Violations of the Pari Passu Clause</u>

Plaintiffs sought leave to amend and supplement their complaints to add new claims for a declaratory judgment that the BONAR 2024 Bonds are External Indebtedness, and specific performance of the Republic's obligations under the Pari Passu Clause by enjoining the Republic from making payments on the BONAR 2024 Bonds and other External Indebtedness unless the Republic makes a Ratable Payment with respect to Plaintiffs' bonds.

In opposition to Plaintiffs' motion to amend and supplement, the Republic argued that the new claims with respect to the BONAR 2024 Bonds were futile because, according to the Republic, the bonds were offered exclusively in Argentina, and thus were DFCI and not subject to the Pari Passu Clause.   Plaintiffs, however, pleaded detailed allegations that the BONAR 2024 Bonds were not offered exclusively in Argentina, and explained that the facts that the Republic asserted concerning the offerings had not been tested by discovery.  Accordingly, the Court granted Plaintiffs' motion for leave to amend and supplement the complaints.  (*See* July 16, 2015 Order [Dkt. No. 803].)  Plaintiffs served and filed their Amended Complaints shortly thereafter.

---

[7]  Although Argentina contends that it has "routinely" used transactions of this nature (Republic Br. at 9), it does not cite any other such transactions, and they would be irrelevant to whether Argentina offered the bonds exclusively in Argentina.

**D.    Plaintiffs Seek Discovery from Third Parties Involved in the Issuance of the BONAR 2024 Bonds**

Recognizing that the Republic contests whether the BONAR 2024 Bonds are External Indebtedness, and desiring to present a full record to the Court on this issue, Plaintiffs served the Subpoenas on certain third parties who, as discussed above, played roles in facilitating the issuance of the bonds, including the Banks.  The three Banks at issue in this motion—JPMorgan, Deutsche Bank, and BBVA—likely possess relevant information regarding Argentina's defense that the BONAR 2024 Bonds were issued exclusively in Argentina.[8]  As detailed below, Plaintiffs served the Subpoenas to obtain information about how the BONAR 2024 Bond offerings were planned, prepared, conducted and executed, to show that the Bonds were offered for sale outside of Argentina.



JPMorgan admittedly participated in the second offering completed in December 2014 (*see* Sept. 11, 2015 Letter from A. Weiss (Ex. 37)).

Deutsche Bank

---

[8]   Contrary to intimations by the Banks, Plaintiffs did not serve the Subpoenas to harass them or punish them for doing business with Argentina.  Indeed, the notion that the Subpoenas were served for harassment purposes is odd in light of the fact that the Court has repeatedly authorized Plaintiffs to obtain discovery from the Banks concerning their involvement in Argentine bond offerings, sometimes on an expedited basis.

3135432.1

██████████████ ultimately placed orders for the majority of the bonds issued in April

2015.  (███████████ *Deutsche Bank and Marathon, Behind Kicillof's Debt Placement*, La

Política Online, Apr. 22, 2015 (Ex. 32).)

████████████████████████████████

███████████████████████████████████

███████████████████████████████████

██████████████████████████

      The Subpoenas seek information concerning how the Bond offerings were

designed and conducted, including information about how Argentina, the Banks and third parties

arranged and executed the offerings, the mechanics of and plans for the marketing and sale of the

bonds, the manner in which those plans were executed, the persons and entities to which the

bonds were marketed and sold, Argentina's knowledge and involvement in making those plans,

Argentina's intentions in issuing the bonds and offering them for sale, and Argentina's

coordination with any third parties to execute the offerings.  This information is directly relevant

to Plaintiffs' contentions (and the Republic's denial of these contentions) that (i) the BONAR

2024 bonds are External Indebtedness, not DFCI, because each issuance of those bonds has been

planned and executed by the Republic and its agents and allies with the intent and actions to

offer, market, and sell the bonds outside Argentina to international investors, and (ii) the

structures the Republic engineered to provide an ostensible basis for claiming the bonds were

offered in Argentina are mere shams designed to avoid the application of the Pari Passu Clause

in the FAA.

**E.**      **The Meet-and-Confer Sessions with the Subpoena Recipients Do Not Result in a Resolution**

Over the last four months, Plaintiffs have engaged in good faith efforts to meet and confer with Deutsche Bank, JP Morgan, and BBVA, but to no avail.  (*See* Exs. 36-38.)  As discussed below, the points of disagreement generally fall into three categories:  (i) whether JPMorgan and Deutsche Bank must produce all relevant information or merely a subset of otherwise relevant documents that they self-servingly deem to be most relevant; (ii) whether JPMorgan, Deutsche Bank and BBVA may redact the names and other identifying information of entities solicited to purchase BONAR 2024 bonds; and (iii) whether Deutsche Bank and BBVA will produce documents purportedly located outside New York.[9]

JPMorgan

███████████████████████████████████████████████

██████████████████████████████████████ has refused to produce any documents about that offering other than its agreement with Repsol and trade tickets (*i.e.*, the document memorializing the terms of the trade) and unspecified transaction data.  Critically, JPMorgan has refused to produce documents detailing its communications with Repsol and other third parties concerning its role in the bond issuance, and showing where it offered the bonds, the location of the offerees, and who purchased the bonds; JPMorgan has also flatly refused to produce its communications with any of the entities to whom the bonds were offered.  With respect to the December 2014 offering, again JPMorgan has refused to produce any documents other than the trade ticket for the one order JPMorgan supposedly placed, but it refuses to provide the identity of that purchaser and refuses to produce any communications with the

---

[9]  Plaintiffs also sought this information because it might lead to the discovery of attachable assets.  Press reports indicate that Argentina intends to issue more BONAR 2024 Bonds and the information sought by the Subpoenas will also potentially reveal information concerning the mechanics of the previous offerings so that Plaintiffs are prepared for future offerings and any attachable opportunities they might present.

Republic, any other persons who received the Republic's offer, or other third parties.  And with respect to the later offering efforts, JPMorgan has refused to produce any documents created after February 26, 2015—when the offering was temporarily suspended by ████████

███████████████████████████████████████████████████████

████████████.  Moreover, while JPMorgan has produced certain documents created prior to February 26, 2015, it has flatly refused to produce *all* documents responsive to the Subpoena from that period, including, for example, communications with its customers to whom the bonds were being offered.

      <u>Deutsche Bank</u>

████████████████████████████████████████████████████

██████████████████████████████████████████████████

████████   While Deutsche Bank has previously produced certain documents related to its efforts in February 2015, it too has refused to produce all documents related to its efforts during that period and responsive to the subpoena, including for example internal committee documents discussing DB's role in the offering.  And it also has refused to produce other documents from the critical period leading up to the April 2015 issuance, including its communications with the vast bulk of customers who were receiving the Republic's offer and its communications with other third parties.  Rather, it will only produce in the first instance communications with five customers (out of dozens) who placed orders through Deutsche Bank, "examples" of the information that was generally shared with potential purchasers, documents concerning the structuring of the offerings, and documents reflecting the terms, governance, and payment of the bonds.  (Sept. 17, 2015 Letter from P. Zimmerman (Ex. 36)).  Like JPMorgan, Deutsche Bank has refused to identify the persons who received the Republic's offer and purchased the bonds.

And perhaps most critically, while Deutsche Bank now agrees to produce the communications of some Deutsche Bank entities with the Republic, it has refused to produce documents from the entities most likely to possess such documents.  Specifically, Deutsche Bank has offered to produce communications from only the New York Branch—i.e., not from the London Branch that purportedly placed the orders for customers—and it has repeatedly refused to produce any documents from its wholly-owned Argentine subsidiary Deutsche Bank S.A., which Deutsche Bank has conceded acted as the London Branch's agent and which would have the bulk of the communications with the Republic.  (*Id.*)

BBVA

Even though the Republic has admitted that BBVA participated in the April 2015 offering, BBVA has refused to produce documents located at branches outside of New York and the Argentine affiliates that acted on its behalf in connection with the offerings, BBVA Banco Francés S.A. and BBVA Francés Valores Sociedad de Bolsa S.A.  It has also refused to identify the persons who received the Republic's offer—unless Plaintiffs forgo documents from outside New York and waive further compliance with the Subpoena.  (Ex. 38.)

**ARGUMENT**

**I.**

**JPMORGAN AND DEUTSCHE BANK SHOULD BE ORDERED
TO PRODUCE ALL DOCUMENTS RESPONSIVE TO
THE NARROWLY-TAILORED REQUESTS IN THE SUBPOENAS**

JPMorgan and Deutsche Bank have taken the position that they should be allowed to refuse to produce whole categories of documents and cherry-pick what they will produce based on their own evaluation of what is relevant to Plaintiffs' claims.  Their objections are contrary to the Federal Rules of Civil Procedure, and are without merit.

The scope of production in response to a subpoena is governed by the relevance standard in Federal Rule of Civil Procedure 26(b)(1).  *See Palumbo v. Shulman*, No. 97 Civ. 4314, 1998 WL 720668, at *3 (S.D.N.Y. Oct. 13, 1998).  Under that rule, "[p]arties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1).  This standard "has been construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case."  *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978).  If a non-party refuses to provide non-privileged, relevant information in response to a discovery request or subpoena, the requesting party may move to compel compliance.  *See* Fed. R. Civ. P. 37(a), 45(d)(2)(B)(i).

The Subpoenas request documents that are unquestionably relevant to a central question in these actions—whether the BONAR 2024 Bonds are External Indebtedness (as Plaintiffs contend) or whether they are DFCI because they were offered exclusively in Argentina (as the Republic contends).  None of the Subpoena recipients seriously contends otherwise.  Plaintiffs have been able to work cooperatively with some Subpoena recipients to identify appropriate search parameters—including custodians and search terms—and have repeatedly offered to do so with JPMorgan and Deutsche Bank.  Both have refused to cooperate, and have, instead, improperly offered to produce only limited categories of documents that they deem relevant.

██████████████████████████████████████████████████████████

██████████████████████████████████████████

████████████████████████████  JPMorgan's unreasonable position is that Plaintiffs should be

satisfied with just trade tickets and its agreement with Repsol.  (Sept. 11, 2015 Letter from A. Weiss (Ex. 37).)

Such documents do not begin to show the totality of JPMorgan's role in the May 2014 offering, including its communications with investors and Repsol, Argentina's allies, the persons to whom the bonds were offered, and other third parties.  As discussed above, Argentina had every intent and desire that the bonds would be offered and distributed to investors around the world because its compensation obligation to Repsol was not satisfied until the bonds were transferred to parties other than Repsol.  (Repsol Settlement Agreement at 8; Repsol Official Notice, Feb. 25, 2015.) ███████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████  By withholding the vast majority of its documents concerning the May 2014 offering JPMorgan is unfairly frustrating Plaintiffs' ability to present a full record to the Court to show how the BONAR 2024 Bonds were offered to investors outside of Argentina.

JPMorgan has also refused to produce documents related to the December 2014 offering other than the trade ticket for one transaction that JPMorgan concedes that it placed, and JPMorgan refused to produce even that single trade ticket without redactions concealing the identifying information of the purchaser.  (Sept. 11, 2015 Letter from A. Weiss).  But JPMorgan does not deny that it had communications with the Republic, third parties, and other potential international investors concerning the offering.  Plaintiffs are entitled to documents in JPMorgan's possession concerning the December 2014 offering—including communications with the Republic, potential investors, and other third parties—because such documents, like the

documents JPMorgan is withholding concerning the earlier May 2014 offering, are relevant to the issue of how and where the bonds were offered.

Finally, with respect to JPMorgan's offering efforts in February 2015 through April 2015, JPMorgan contends that Plaintiffs should be satisfied with JPMorgan's prior production (made only after the Court compelled production), even though that production ended as of February 26, 2015, and did not include all documents responsive to the subpoena from that period.  As the Court is aware, JPMorgan previously resisted discovery about these efforts on the theory that there was no contemplated offering outside the Republic.  (Feb. 25, 2015 Hr'g Tr. (Ex. 40) at 11:7-9.)  The Court-ordered discovery showed otherwise.  ███████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████.  The offering resumed just a short while later, and even though JPMorgan claims not to have placed any orders in the April 2015 offer, Plaintiffs are entitled to documents in JPMorgan's possession concerning the offering as completed, including any communications with the Republic, Deutsche Bank, third parties, and any offerees or potential investors.[10]

Deutsche Bank also played a major role in helping the Republic issue the BONAR 2024 Bonds—██████████████████████████████████████████

████████████████████  And like JPMorgan, Deutsche Bank has taken the position that Plaintiffs should be content with an unreasonably limited production—(1) documents through

---

[10]  JPMorgan has taken the position that Plaintiffs should seek these documents from other parties, such as the Republic, other banks, and Repsol.  (*See* Sept. 18, 2015 E-mail from A. Weiss (Ex. 37)).  But JPMorgan plainly possesses documents that other entities do not, such as its communications with its own customers.  Moreover, the fact that other entities may also have responsive documents does not excuse JPMorgan's non-compliance, especially given that (i) the Republic has a history of not being responsive to discovery requests; (ii) other banks have similarly refused to comply with the Subpoenas as set forth in this motion; and (iii) when Plaintiffs previously served a subpoena on Repsol's U.S. subsidiary, that entity took the position that it could not produce documents in the possession of its Spanish parent company (*see* Plaintiffs' Supplemental Brief, Feb. 17, 2015 [Dkt. 745] at n.53).

3135432.1

March 5, 2015 that Deutsche Bank produced pursuant to the Court's February 26, 2015 order, (2) limited bid and payment information provided by Deutsche Bank's counsel without any supporting documentation (only after being ordered to do so by the Court), (3) communications with a handful of the dozens of Deutsche Bank customers who participated in the April 2015 offering, certain "examples" of information that was generally shared with potential purchasers, and (4) documents concerning the structuring, terms, and payment of the bonds.  (*See* Sept. 17, 2015 Letter from P. Zimmerman (Ex. 36).)

Deutsche Bank is withholding what potentially amounts to the vast bulk of its documents responsive to the Subpoena.  These documents—including memoranda prepared for internal committees (including risk and investment banking committees) concerning Deutsche Bank's role in the offering, documents related to its efforts in February 2015 with respect to the Bonds, documents from the critical period leading up to the April 2015 issuance, and communications with JPMorgan, other banks, and most of its customers.  All of the withheld documents—including those that would show the identities and locations of the persons to whom the bonds were offered, marketed or sold (not merely the top five bidders)—are relevant to the ultimate issue of whether the BONAR 2024 Bonds were offered exclusively in Argentina. Deutsche Bank cannot assert that it would be unduly burdensome for it to produce these materials given the limited time period at issue and the millions of dollars in fees it has earned from the offerings.  Indeed, Deutsche Bank's steadfast refusal to discuss search parameters with Plaintiffs (other than offering to identify custodians from whom it would produce documents) suggests that Deutsche Bank knows from its prior searches for responsive documents that the search pursuant to the subpoena would not be unduly burdensome.  (Sept. 25, 2013 Order [Dkt.

18

484] at 5-6 (granting motion to compel Deutsche Bank, among others)).  Accordingly, Deutsche

Bank should be ordered to produce all responsive documents forthwith.

## II.

### JPMORGAN, DEUTSCHE BANK AND BBVA HAVE NO BASIS FOR REDACTING HIGHLY RELEVANT INFORMATION CONCERNING NAMES AND ADDRESSES OF THE OFFEREES

JPMorgan, Deutsche Bank, and BBVA all refuse to provide names and

identifying information for the offerees and purchasers of the BONAR 2024 Bonds.  Plaintiffs

are entitled to this information, which is certainly relevant to show to where the bonds were

offered.  Moreover, Plaintiffs may legitimately use this information so that they can, if

appropriate, make follow up inquiries.

A.     JPMorgan and Deutsche Bank contend that Plaintiffs should be satisfied

with information the Banks deem sufficient to reveal the location or jurisdiction of the

purchasers and offerees of the bonds.  They have refused to produce information that reveals the

identity of the offerees—which would enable Plaintiffs to determine for themselves the location

of those entities, many of which span national borders—unless Plaintiffs agree to take it on an

attorneys' eyes only basis, such that Plaintiffs themselves could not see it.  These contentions are

without merit.  This Court already issued protective orders more than four years ago that

adequately protect the interests of third parties that produce discovery in these matters, and those

orders place no limitation on the parties' ability to view produced documents.  Neither JPMorgan

nor Deutsche Bank offers any rationale for why its information requires greater protections than

the protective order provides.  *See In re Parmalat Secs. Litig.*, 258 F.R.D. 236, 244 (S.D.N.Y.

2009) (A party opposing disclosure under Rule 26 "must make a particular and specific

demonstration of fact showing that disclosure would result in an injury sufficiently serious to

warrant protection." (citations omitted)).

The Banks' production limitations would pose a significant hardship to Plaintiffs, who do not rely solely on counsel but are deeply involved themselves in the intensive and multi-disciplinary investigation and analysis required for the prosecution of these actions.  Counsel need to have full and effective discussions with Plaintiffs regarding the offerings.  The purported concerns the Banks have raised to justify these attorneys-eyes only restrictions—that Plaintiffs will misuse the information—are baseless given the terms of the protective orders that have operated without issue for many years.[11]

Nor is the offer by JPMorgan and Deutsche Bank to identify the "jurisdiction" or country of the purchaser or offeree an appropriate substitute for the identifying information.  It is far from clear how the Banks would purport to identify jurisdiction of these offerees.  Investment funds frequently have offices and principals around the world, who direct investment vehicles in entirely different jurisdictions.  Plaintiffs would have no way to test the accuracy or completeness of the jurisdiction information from the Banks, and Plaintiffs' efforts to present a complete record to the Court documenting the location of offerees would be substantially hampered.

B.     BBVA, on the other hand, has conditioned providing the identifying information of purchasers and offerees on Plaintiffs' consenting not to seek information held by BBVA outside of New York.  It is unreasonable for BBVA to require Plaintiffs to waive their rights to these documents outside New York because, as explained above, Plaintiffs are entitled

---

[11]   Previous accusations by Deutsche Bank to the effect that Plaintiffs have violated the protective order by leaking confidential discovery material to the press are false and premised on nothing more than speculation.  The Court may recall that on July 6, 2015, Deutsche Bank submitted a letter in which it made accusations of alleged misconduct by Plaintiffs in regards to information disclosed in discovery.  Rather than burden the Court with a potentially unnecessary rebuttal of those completely unfounded and absurd assertions, Plaintiffs will respond to such allegations if the Banks elect to reassert them in response to this motion.

to such documents, which are likely to have valuable information about the offering of the

BONAR 2024 Bonds.

### III.

**DEUTSCHE BANK AND BBVA CANNOT PROPERLY REFUSE
TO PRODUCE DOCUMENTS WITHIN THEIR POSSESSION,
CUSTODY AND CONTROL ON THE BASIS THAT SUCH DOCUMENTS
ARE LOCATED OUTSIDE OF NEW YORK**

Deutsche Bank and BBVA both assert that the Subpoenas cover only documents

located at their New York offices, even though neither dispute that they can obtain responsive

documents from their non-New York offices.  BBVA has refused to produce documents located

at branches outside of New York (including its London branch), and both Deutsche Bank and

BBVA refuse to produce documents that they contend belong to their respective affiliates in

Argentina – Deutsche Bank S.A., BBVA Banco Francés S.A. and BBVA Francés Valores

Sociedad de Bolsa S.A.  Deutsche Bank's and BBVA's contentions are without merit.

First, this Court has personal jurisdiction over both Deutsche Bank and BBVA

and can therefore compel those banks to comply with Plaintiffs' subpoenas.  *See Gucci Am., Inc.

v. Weixing Li*, 768 F.3d 122, 141 (2d Cir. 2014) (personal jurisdiction "may permit the district

court to order the Bank to comply with particular discovery demands").  Both Banks consented

to general personal jurisdiction when they registered as "foreign branches" with the New York

Department of Financial Services.  *See Vera v. Republic of Cuba*, No. 12 Civ. 1596, 2015 WL

1244050, at *8 (S.D.N.Y. Mar. 17, 2015) (holding that this Court has jurisdiction over BBVA

S.A. because it registered as a foreign branch and therefore "BBVA consented to the necessary

regulatory oversight in return for permission to operate in New York"); *see also* N.Y. Dep't of

Fin. Servs., Foreign Branches As of Sept. 3, 2015,

http://www.dfs.ny.gov/about/whowesupervise/sifbranc.htm (last accessed Sept. 28, 2015) (listing

3135432.1

"Banco Bilbao Vizcaya Argentaria, S.A." and "Deutsche Bank AG"); *cf. Gucci*, 768 F.3d at 136

n.15 ("The district court may also consider whether [the foreign bank] has consented to personal

jurisdiction in New York by applying for authorization to conduct business in New York and

designating the New York Secretary of State as its agent for service of process.").

   This Court also has specific personal jurisdiction over both Deutsche Bank and

BBVA.  A court has specific jurisdiction over a non-party in the subpoena enforcement context

"where the subpoena enforcement action at issue arises out of [the nonparty's] contacts with the

forum."  *Application to Enforce Admin. Subpoenas Duces Tecum of the S.E.C. v. Knowles*, 87

F.3d 413, 418 (10th Cir. 1996) (internal quotation marks omitted) (cited in *Gucci*, 768 F.3d at

141; *see also Gucci Am., Inc. v. Weixing Li*, No. 10 Civ. 4974 (RJS), 2015 WL 5707135, at *9

(S.D.N.Y. Sept. 29, 2015) (finding specific personal jurisdiction over a non-party foreign bank,

where there was a "substantial nexus" between the requests in the subpoena and the bank's

activities in New York). ████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████████████

3135432.1

████████████████████████████████████████

████████████████████

This Court thus has both general and specific personal jurisdiction over BBVA and Deutsche Bank, and thus can compel both Banks to produce documents pursuant to the Subpoenas, even if those documents are located outside of the United States. "It is no longer open to doubt that a federal court has the power to require the production of documents located in foreign countries if the court has *in personam* jurisdiction of the person in possession or control of the material." *United States v. First Nat'l City Bank*, 396 F.2d 897, 900-01 (2d Cir. 1968); *see also Tiffany (NJ) LLC v. Qi Andrew*, 276 F.R.D. 143, 147-48 (S.D.N.Y. 2011) ("If the party subpoenaed has the practical ability to obtain the documents, the actual physical location of the documents—even if overseas—is immaterial."); *Cooper Indus., Inc. v. British Aerospace, Inc.*, 102 F.R.D. 918, 920 (S.D.N.Y. 1984) ("The fact that the documents are situated in a foreign country does not bar their discovery.").  Indeed, in these actions the Court has previously ordered the production of documents located in Argentina.  (May 29, 2009 Order [Dkt. 112] (ordering Citibank to search for and produce all responsive documents or information at any Citibank branch or affiliate located anywhere inside or outside the United States, including Argentina)).  And neither Deutsche Bank nor BBVA dispute that its parent entity—Deutsche Bank AG and Banco Bilbao Vizcaya Argentaria, S.A.—has the ability to obtain the documents.[12]

To the extent that Deutsche Bank's objections invoke the Separate Entity Rule, Deutsche Bank is mistaken.  That rule places limits on a court's ability to attach and execute on assets located at bank branches other than the branch that has been served with process.

---

[12]  Deutsche Bank erroneously contends that its New York branch cannot obtain documents outside of New York, but what its *branch* can do is irrelevant.  Plaintiffs served a Subpoena on Deutsche Bank AG, which controls not only its New York branch, but also its operations outside of New York.  Deutsche Bank AG thus has an obligation to produce documents over which it has control, including those documents in Argentina.

Numerous courts have refused to extend this New York-law doctrine beyond the attachment context. *Gucci*, 2015 WL 5707135 at *6 (holding that "where the remedy sought is . . . a subpoena, the separate entity rule has not barred enforcement") (citation omitted); *Global Tech., Inc. v. Royal Bank of Canada*, 2012 WL 89823, at *13 n.12 (N.Y. Sup. Ct. Jan. 11, 2012) ("Separate Entity Rule" does not apply to judgment enforcement discovery).  Indeed, consistent with the rulings of many other courts, this Court has previously overruled discovery objections asserted by Deutsche Bank based upon the Separate Entity Rule.  (Sept. 25, 2013 Order [Dkt. No. 484].)  *See also Eitzen Bulk A/S v. Bank of India*, 827 F. Supp. 2d 234 (S.D.N.Y. 2011) ("Bank of India's subpoena responses must account for information and materials available from branches outside New York."); *Motorola Credit Corp. v. Uzan*, 288 F. Supp. 2d 558, 560-62 (S.D.N.Y. 2003) (permitting discovery from overseas branches).  There is no reason for the Court to depart from its prior rulings and the overwhelming weight of authority.

This Court should order Deutsche Bank and BBVA to produce documents from all their branches that possess responsive documents.

## **CONCLUSION**

For the foregoing reasons, the Court should grant Plaintiffs' motion and order JPMorgan, Deutsche Bank and BBVA to comply fully with the Subpoenas.

24

Dated:   New York, New York
         October 5, 2015

                                    Respectfully Submitted,

                                    FRIEDMAN KAPLAN SEILER &
                                      ADELMAN LLP


                                    Edward A. Friedman
                                    Daniel B. Rapport
                                    Marc G. Farris
                                    7 Times Square
                                    New York, New York  10036-6516
                                    (212) 833-1100

                                    *Attorneys for Plaintiffs Aurelius Capital Master,
                                    Ltd., ACP Master, Ltd., Aurelius Opportunities
                                    Fund II, LLC and Blue Angel Capital I LLC*

                                    Kevin S. Reed (kevinreed@quinnemanuel.com)
                                    QUINN EMANUEL URQUHART
                                      & SULLIVAN LLP
                                    51 Madison Avenue, 22nd Floor
                                    New York, New York 10010
                                    (212) 849-7000

                                    *Attorneys for Plaintiff NML Capital, Ltd.*

                                    Leonard F. Lesser (llesser@simonlesser.com)
                                    SIMON LESSER PC
                                    355 Lexington Avenue, 10th Floor
                                    New York, New York 10017
                                    (212) 599-5455

                                    *Attorneys for Plaintiff Olifant Fund, Ltd.*

                                    Michael C. Spencer (mspencer@milberg.com)
                                    MILBERG LLP
                                    One Pennsylvania Plaza
                                    New York, New York 10119
                                    (212) 594-5300

                                    *Attorneys for Plaintiffs Pablo Alberto Varela, et al.*

3135432.1                                        25